L. W. JOHNSON ET AL., APPELLANTS, v. UNION PACIFIC RAILROAD COMPANY, APPELLEE.

274 N. W. 581

FILED JULY 22, 1937. No. 29774.

*C. A. Sorensen* and *P. E. Boslaugh,* for appellants.

*T. W. Bockes, T. F. Hamer, G. C. Holdrege* and *Fred C. Foster, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

ROSE, J.

This is an appeal to the supreme court from a decision of the Nebraska state railway commission.

L. W. Johnson and F. J. Johnson, partners as Johnson Cash-Way Lumber Company, and John E. Forsell, complainants, are engaged in the retail lumber business and, under a lease assigned to them, occupy a portion of the right of way of the Union Pacific Railroad Company, defendant, at Grand Island, where they are using trackage privileges, buildings and other equipment. They complained to the Nebraska state railway commission that defendant attempted to cancel their lease and to oust them from their location. They also charged that defendant, illegally, by discrimination in favor of other lumber dealers operating in the same railroad yards, sought to deprive them of equal railroad facilities, services and accommodations. Complainants offered to pay the stipulated rentals and otherwise to comply with the terms of the lease. The prayer for relief follows:

"That after due hearing and investigation an order be made commanding said defendant to cease and desist from discrimination, favoritism, or partiality against the complainants, and each of them, and in favor of any other firm or corporation desiring the use of the premises covered by said lease, and be required to furnish the complainants, and each of them, adequate, reasonable and equal facilities,

service and accommodations in the operation of its business by permitting the complainants, and each of them, to retain possession and use of the premises covered by said lease."

An answer of defendant challenged the jurisdiction of the Nebraska state railway commission to grant any relief under the complaint; pleaded the assignment of the lease was void for want of written consent of lessor; cancelation of the lease pursuant to its own terms; put in issue the charges of discrimination. After a full hearing the complaint was dismissed for want of jurisdiction. Complainants appealed from the dismissal.

Had the Nebraska state railway commission power to grant the relief sought by complainants?. There is no serious controversy over any material fact. The documents involved in the controversy are in the record. On the issues of jurisdiction and discrimination complainants rely on the constitutional provision creating the Nebraska state railway commission and the statutes relating to its powers and duties as well as on acts forbidding discriminations in rates and inequalities in facilities for railroad transportation. The Constitution provides:

"The powers and duties of such commission shall include the regulation of rates, service and general control of common carriers as the.legislature may provide by law." Const. art. IV, sec. 20.

Reference is made to the following provisions of statute:

"If any railway company or common carrier * * * makes or gives any undue or unreasonable preference or advantage to any particular person, company, firm or corporation or locality, or subjects any particular description of traffic to any undue or unreasonable prejudice, delay or disadvantage in any respect whatsoever, the same shall constitute an unjust discrimination, which is hereby prohibited." Comp. St. 1929, sec. 75-702.

"Every railroad corporation shall give to all persons and associations reasonable and equal terms, facilities and accommodations for the transportation of merchandise, prod-

uce, commodities and other property of every kind and description upon any railroad owned, leased or operated within the state, and reasonable and equal terms, service, facilities and accommodations for terminal handling of all property and commodities whatsoever, including the use of depot and other buildings, yards and other grounds of such corporation." Comp. St. 1929, sec. 74-501.

The method by which complainants got possession of that part of their location on defendant's right of way may be explained as follows: June 15, 1933, C. H. Cousins, as a receiver of the Cousins Lumber Company, procured from defendant a lease of the premises in controversy for a term beginning January 1, 1933, and ending January 1, 1938, "unless sooner terminated," as in the lease provided. The contract, therefore, was not an unconditional lease for a definite period. It bound lessee in specific terms not to lease or sublease or assign the leased premises or any part thereof without the written consent of lessor. A violation of those obligations made the lease void at the option of lessor. Failure to pay rent in the amount and at the time specified had the same effect.

Lessee made default in payment of rent and did not procure written consent of lessor, defendant, to an assignment of the lease. Part of the land on which the lumber business was operated was owned by lessee adjacent to, but not on, the railroad right of way. June 1, 1935, the Cousins Lumber Company, by federal court receivers, C. H. Cousins and W. H. Gillispie, entered into a contract with John E. Forsell, complainant, to sell and transfer to him for $9,250 the entire stock of lumber and other materials in the lumber yard of the Cousins Lumber Company, including its buildings and real estate. This contract also provided for the assignment of the interests of lessee in the Union Pacific Railroad Company's lease to Forsell. The sale of the lumber yard and stock of materials and realty was authorized by the district court of the United States for the western division of the western district of Missouri. The property of lessee was transferred as provided in the

sale contract and the lease was assigned to Forsell. The evidence shows that, in the negotiations by Forsell for the purchase of the property of the Cousins Lumber Company, he acted as agent for the complainants Johnson and Johnson and the Johnson Cash-Way Lumber Company and for a time endeavored to conceal from lessor the fact that they were the real purchasers. Complainants took possession of the property purchased and the leased premises of the Union Pacific Railroad Company's right of way June 4, 1935. Defendant notified complainants June 15, 1935, that it exercised its option to cancel the lease and that it demanded vacation of the premises by July 22, 1935. Complainants adduced evidence tending to prove that ouster would deprive them of trackage, a privilege retained by their competitors, and drive complainants out of business in the railroad yards at Grand Island. Estimates of resulting losses in the event of eviction were also made. Their contention is:

"The defendant may not discriminate between the complainants and their competitors in the matter of leasing of its private property. Either all the lumber yards must be ordered off the right of way or all be allowed to stay."

This doctrine overlooks the distinction that the competitors had the privileges of right of way and trackage and complainants had not. The lease was canceled according to its own terms. The option to cancel and the breach that justified it were shown on the face of the lease in connection with the assignment itself. Assignee acquired no greater rights than lessee had. The lease was terminated. Complainants had seised a portion of the right of way. They assert that discrimination can be prevented only by driving all lumber dealers off. Complainants are in the position of asking the Nebraska state railway commission to protect them in their seisure and occupancy of the premises under the contract of lease and at the same time of insisting on an order to impair or destroy that part of the same contract which, in simple and direct language, grants defendant, the lessee, authority to cancel the lease

for the assignment of it without lessor's consent in writing. The power to impair or destroy the obligations of a contract by the seisure of private property for private use without the consent of the owner was never committed to the Nebraska state railway commission. If railroad corporations are to continue to furnish transportation of passengers and freight for the public, they must be permitted to adopt such honest, lawful, business methods and such reasonable and just control over their own property as will enable them to earn the necessary funds for that purpose. Revenue is essential to their existence and operation. Private enterprise on an unleased railroad right of way has no greater control over such private property than the common carrier that owns it. That part of the railroad right of way in controversy is a site for a wholesale lumber yard. The evidence indicates that there is a prospect of such an enterprise there and that it would increase defendant's revenue by an increase in both inbound and outbound tonnage. There is at present no wholesale lumber yard in the railroad yards of defendant at Grand Island.

Both the supreme court of the United States and the interstate commerce commission have adopted the general rule that a railroad right of way adjacent to tracks, when not a part of railroad transportation facilities devoted or necessary to public use, is private property of the carrier and that the latter may lease it for private purposes to one or more persons and deny a like privilege to others. *Donovan v. Pennsylvania Co.*, 199 U. S. 279; *Andrews Bros. Co. v. Pennsylvania R. Co.*, 123 I. C. C. 733. In a case analogous to the present controversy the supreme court of the United States said:

"To require the railroad company to grant to the petitioners a location on its right of way, for the erection of an elevator for the specified purpose of storing from time to time the grain of the petitioners and of neighboring farmers, is to compel the railroad company, against its will, to transfer an estate in part of the land which it owns and holds, under its charter, as its private property and

for a public use, to an association of private individuals, for the purpose of erecting and maintaining a building thereon for storing grain for their own benefit, without reserving any control of the use of such land, or of the building to be erected thereon, to the railroad company for the accommodation of its own business, or for the convenience of the public.

"This court, confining itself to what is necessary for the decision of the case before it, is unanimously of opinion, that the order in question, so far as it required the railroad corporation to surrender a part of its land to the petitioners, for the purpose of building and maintaining their elevator upon it, was, in essence and effect, a taking of private property of the railroad corporation, for the private use of the petitioners. The taking by a state of the private property of one person or corporation, without the owner's consent, for the private use of another, is not due process of law, and is a violation of the Fourteenth Article of Amendment of the Constitution of the United States." *Missouri P. R. Co. v. Nebraska,* 164 U. S. 403, 417.

Whatever proper view is taken of the present proceeding, the Nebraska state railway commission was without power to grant the relief sought by complainants. The dismissal is therefore

AFFIRMED.